IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEBORAH MOSING,

                Plaintiff,

v.                                                            OPINION and ORDER

KILOLO KIJAKAZI,[1]                                     20-cv-456-jdp
Acting Commissioner of Social Security,

                Defendant.

---

       Plaintiff Deborah Mosing seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Mosing not disabled within the meaning of the Social Security Act. Mosing contends that the administrative law judge (ALJ) who decided her case erred by failing to properly weigh and incorporate medical opinion evidence regarding Mosing's mental health functioning. The court concludes that ALJ's assessment of the opinion evidence is well-explained and supported by the record. The court will affirm the commissioner's decision.

BACKGROUND

**A. Application and medical history**

       Deborah Mosing applied for disability benefits in March 2018, when she was 46 years old. She alleged that she had been disabled since February 2018, due to several physical and

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

mental health impairments. R. 220, 222.[2] Mosing does not challenge the ALJ's evaluation of her physical impairments or physical work limitations, so the court need not discuss those issues in this decision.

Mosing has a long history of treatment for chronic mental health conditions, including bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder (ADHD). R. 1210. She has seen several mental healthcare providers, and she has managed her condition with regular psychotherapy and psychotropic medications. She saw Dr. Bababo Opaneye, a psychiatrist, every two months for several years for medication management and some counseling. R. 959. Dr. Opaneye completed a mental health assessment opining that Mosing had several mental limitations that would affect her ability to work, and that she would miss more than four days of work per month due to her impairments. R. 963.

In connection with Mosing's disability application, Mosing underwent a consultative mental status examination by Gregory Cowan, Ph.D., in July 2018. Dr. Cowan opined that Mosing's ability to understand, remember, and carry out simple instructions was mildly to moderately impaired with medication; her ability to respond appropriately to supervisors and coworkers was moderately impaired; her concentration and attention were moderately impaired with medication, and markedly impaired without medication; and her ability to withstand routine work stresses and adapt to workplace changes in a full-time competitive work environment was markedly impaired. R. 719.

After Dr. Cowan's examination, two non-examining agency consultants reviewed Mosing's records. During the initial review in August 2018, Dr. Debra Pape, Ph.D, determined

---

[2] Record cites are to the administrative record, located at Dkt. 14.

that Mosing had severe impairments of bipolar disorder, ADHD, anxiety, and depression, R. 67. On the mental-capacity-assessment form that she completed, Dr. Pape noted that Mosing had moderate limitations in concentrating for extended periods; maintaining a schedule, regular attendance, and punctuality; completing a normal workday or workweek without interruptions from psychologically based symptoms, maintaining pace without an unreasonable length or frequency of rest breaks; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers; and responding appropriately to changes in the work setting. R. 71–74. But Dr. Pape concluded, in her narrative opinion, that Mosing could perform simple routine work, so long as the jobs required no more than occasional interaction with the public and permitted her to be off-task for up to 10% of the workday. *Id.*

In December 2018, at the reconsideration stage, Dr. Larry Kravitz, Psy.D, concurred with Dr. Pape's assessment. R. 106–09. Dr. Kravtiz noted that the recent evidence did not suggest that Mosing's mental impairments had worsened, and he concluded in his narrative opinion that Mosing would be able to persist at simple tasks and cope with normal work changes in a non-demanding work environment, but that she would do best in a work environment with only straightforward and undemanding social requirements. R. 107–08.

**B. Administrative hearing**

At a hearing before an ALJ in September 2019, Mosing testified that her depression, stress, anxiety, and concentration problems prevented her from working. R. 47–53. Until 2018, she had worked full time at McDonald's, but she reduced her hours in 2018 due to stress, anxiety, and difficulty concentrating at work. R. 40. At the time of her disability application, Mosing was working approximately 20 hours a week. *Id.* She testified that she frequently was

3

depressed, had difficulty sleeping, and needed reminders to bathe and perform household tasks. R. 51–52. But she also testified that she drove regularly, prepared meals, helped with household chores, grocery shopped, continued to work 20 hours per week, and got along with her coworkers. R. 42–44, 47. A vocational expert was asked at the hearing to consider a hypothetical person with Mosing's age, education, work experience, and residual functional capacity. The vocational expert opined that that person could not perform Mosing's past work, but could perform other light work available in the national economy, including hand packer, assembler, and sorteR. R. 56–57.

## C. ALJ decision

The ALJ issued a decision finding Mosing not disabled. He determined that Mosing had several severe physical and mental impairments, including generalized anxiety disorder, bipolar disorder, major depressive disorder, schizoaffective schizophrenia, and attention deficit/hyperactivity disorder, but that none of her impairments, whether considered singly or in combination, was severe enough to be presumptively disabling. The ALJ found that Mosing retained the residual functional capacity to perform a reduced range of light work, with the additional limitations he had asked a vocational expert to consider at the hearing. AR 19. To account for Mosing's mental limitations, the ALJ restricted Mosing to performing simple, routine, repetitive tasks; in a low stress job, defined as requiring only occasional decision making, only occasional changes in the work setting, and no strict production rate requirements; and only occasional interaction with the public, coworkers and supervisors. R. 19. The ALJ concluded that although Mosing's impairments prevented her from performing her past relevant work, she could make a vocational adjustment to jobs existing in significant numbers in the national economy.

ANALYSIS

Mosing contends that the ALJ erred by failing to account adequately for her mental impairments in the residual functional capacity assessment and hypothetical questions to the vocational expert. Specifically, she argues that the ALJ erred by: (1) giving inadequate reasons for rejecting the opinion of Dr. Bababo Opaneye, her treating psychiatrist, and Dr. Gregory Cowan, the examining psychologist; (2) failing to recognize inconsistencies in the opinions of Deborah Pape, Ph.D, and Larry Kravitz, Psy.D.; and (3) failing to account for all of Dr. Pape's and Dr. Kravitz's opinions in the mental residual functional capacity assessment. Mosing argues that if the ALJ had evaluated the medical opinions and her mental impairments adequately, he would have found that Mosing's mental impairments made her unable to work.

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

The ALJ's decision in this instance is supported by substantial evidence. The ALJ provided a thorough discussion of Mosing's mental health diagnoses and treatment, and he explained why Mosing's mental impairments were not disabling. The ALJ reviewed Mosing's reports of her symptoms, including her testimony that she had anxiety, irritability, difficulty sleeping, difficulty with focus and attention, mood lability, and depressive episodes. R. 23 (citing R. 528, 593, 715, 1210). He also discussed the objective medical evidence, noting that

5

Mosing had received treatment for bipolar disorder, ADHD, and schizophrenia. R. 23 (citing R. 595, 1210). But he noted that despite Mosing's mental impairments, she was able to concentrate sufficiently to perform many tasks, including driving, working part-time, grocery shopping, preparing meals, and managing her own finances. The ALJ observed that despite Mosing's ongoing complaints of anxiety, depression, and poor concentration, her symptoms were at least partially controlled with medications, and her treating providers characterized her as cooperative and alert with good eye contact, intact judgment and thought processes, average intelligence, and no short-term or long-term memory deficits. R. 24. The ALJ concluded that Mosing's testimony regarding the severity or frequency of her symptoms was not consistent with the totality of the evidence.

Mosing's challenges to the ALJ's decision are not persuasive. She argues that the ALJ should have given more weight to the opinions of Dr. Opaneye, her treating psychiatrist, and Dr. Cowan, because they had actually examined Mosing and their opinions were consistent. However, the ALJ explained adequately why he discounted their opinions.

The ALJ found much of Dr. Opaneye's opinion "persuasive," reasoning that it was supported by Mosing's moderate symptoms, her limitations identified during treatment, and her performance on mental status examinations. R. 25–26. But the ALJ concluded that Dr. Opaneye's opinion that Mosing would miss more than four days of work per month was inconsistent with the record as a whole. R. 26. Mosing testified that her recent absences from work were due to temporary shoulder problems and were not related to mental impairments. R. 26 (citing R. 39). Mosing develops no argument as to how the ALJ erred with respect to this opinion.

6

As for Dr. Cowan, the ALJ explained that Cowan's opinion was only "somewhat persuasive," because some of Cowan's conclusions were not supported by his own examination findings and were inconsistent with the results of other examinations in the record. R. 25. The ALJ was not persuaded by Dr. Cowan's opinion that Mosing would be unable to withstand routine work stresses and adapt to workplace changes because it was inconsistent with Mosing's treatment records and improvement with medication. The ALJ cited numerous records from Mosing's mental health appointments showing that, although Mosing had a flat affect, anxiety, and depression, she demonstrated intact judgment and thought processes, average intelligence, no memory deficits, cooperative behavior, and good eye contact. R. 24 (citing R. 524, 528, 589, 594, 765, 777, 1135, 1150, 1156, 1161, 1166, 1183, 1204). The ALJ also noted that Mosing told Dr. Cowan that her medication calmed her down and that her mood was "pretty good" if she took her medication. R. 717–18. The ALJ noted that portions of Dr. Cowan's opinion appeared to be based entirely on Mosing's subjective statements that she could only maintain part-time work, and it lacked support in Cowan's objective exam findings and other objective evidence. R. 25. The ALJ's explanations for discounting Dr. Opaneye's and Dr. Cowan's opinions are well-explained and supported by the record.

Mosing also argues that the ALJ erred by giving weight to the opinions of Dr. Pape and Dr. Kravitz, the psychological consultants, but then failing to properly account for all of Pape's and Kravitz's opinions about Mosing's mental limitations. She argues that the ALJ incorporated only the consultants' narrative conclusions, but he ignored specific opinions about functional capacity. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (ALJ must consider whether consultants' narrative assessments "adequately encapsulate" the checklist opinions). In Mosing's view, the checklist portion of their mental health assessments (rating her as

"moderately" limited in areas related to maintaining concentration, pace, punctuality, and social interaction) conflicts with the narrative portion (stating that she could perform simple routine work in a non-demanding work environment so long as she had no more than occasional interaction with the public and was permitted to be off-task for up to 10% of the workday).

But Dr. Pape's and Dr. Kravitz's narrative opinions were consistent with their moderate checklist ratings. A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair," which does not mean "bad" or "inadequate." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (*citing* 20 C.F.R. Pt. 404, Subpt. P, App. 1). A moderate limitation in areas related to maintaining concentration, pace, punctuality, and social interaction is consistent with the ability to perform simple routine work in a non-demanding work environment. *See id.* ("A 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."); *Urbanek v. Saul*, 796 Fed. Appx. 910, 914 (7th Cir. 2019) ("Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record.").

And the ALJ's residual functional capacity assessment is consistent with Pape's and Kravitz's findings. The ALJ limited Mosing to simple, routine, repetitive tasks; a low stress job, defined as only occasional decision making required and only occasional changes in the work setting with no strict production rate requirements; and only occasional interaction with the public, coworkers, and supervisors. R. 19. This residual functional capacity is consistent with the consultants' narrative opinions, and it captures Mosing's demonstrated mental limitations.

8

*See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (residual functional capacity assessment need only account for "claimaint's demonstrated psychological impairments"); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (ALJ may rely on medical consultant's narrative statement in crafting residual functional capacity); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (ALJ did not err in ignoring finding that plaintiff was moderately limited in concentration and pace where psychologist's narrative indicated plaintiff had concentration and pace "necessary to fulfill a normal workday").

In sum, the ALJ reasonably relied upon the opinions of state agency psychological consultants and supported his decision with substantial evidence. The court will affirm the commissioner's decision denying benefits.

ORDER

IT IS ORDERED that that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Deborah Mosing's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered March 29, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge